## Rice's Estate.

*Howard H. Rapp* and *Clement B. Wood,* of Morgan, Lewis & Bockius, for accountant and nieces of decedent.

*Everett H. Brown, Jr.,* for children of nieces and nephew of decedent.

*John M. Dettra,* for Germantown Trust Company, substituted trustee under will.

HOLLAND, P. J.—Mary B. Rice died on February 11, 1912, having made her last will and testament bearing date of January 2, 1890, with two codicils thereto bearing dates, respectively, August 12, 1898, and January 4, 1905, all duly probated February 4, 1912.

In the will the testatrix provided as follows:

"All my estate real and personal whatsoever and wheresoever I give unto my sister Anna Evelyn Sibley now wife of Francis P. Sibley of the City of Philadelphia Cotton Broker for her life time—And after the death of the said Anna Evelyn Sibley the said estate to be equally divided among my nieces, then living the daughters of my sister the said Anna Evelyn Sibley share and share alike."

In the codicil dated August 12, 1898, she provided:

"I direct that on the death of my sister Anna Evelyn Sibley the principal of my estate which I have directed shall be equally divided among my nieces her daughters then living, shall not be so divided or distributed but shall be held in trust the income to be divided equally among the children of my said sister who may be then living and the issue of those who may be deceased leaving issue said issue to take only their parent's share, for and during the term of the lives of her said children and on the death of the survivor of said children the principal thereof to be equally divided among the issue of said children then living the issue of each child to take only their parents share in such proportions as they would be entitled to the same under the intestate laws of Pennsylvania had said child died at that time intestate, unmarried and seised of the same."

Testatrix was survived by her sister, Evelyn R. Sibley, named in the will and codicil as Anna Evelyn Sibley, and the trust for her became operative. The said Evelyn R. Sibley, as trustee, received the corpus of the trust.

The said Evelyn R. Sibley died on January 4, 1929, and the account now before the court, which was filed October 2, 1929, shows a balance of principal for distribution of $28,859.97, composed of the unconverted investment securities set forth on page ten of the account, carried at $27,913.06, and cash; and a balance of income of $385.01.

Under the provisions which we have quoted above from the will and codicil, three questions are submitted to us for decision. The first question is: The will having given the residuary estate to the sister of the testatrix, Evelyn R. Sibley, for her lifetime, and after her death to be equally divided among the nieces of the testatrix then living, the daughters of the sister, and the codicil directing that on the death of the sister the principal of the estate shall not be devised among the sister's daughters then living but shall be held in trust to divide the income equally among the children of the sister who may be then living and the issue of those who may be deceased leaving issue during the lives of said children, and on the death of the survivor of the children the principal to be divided among the issue of said children then living, is the provision in the codicil directing division of the principal among the issue of the sister's children living at the death of the surviving child void under the rule against perpetuities? The daughters of Evelyn R. Sibley living at her death were Agnes E. S. Browne and Christine S. Frazier, who are of full age. F. Leonard Sibley, a son of said Evelyn R. Sibley, is living. Said three children of Evelyn R. Sibley are of full age. Agnes E. S. Browne has two minor children, Evelyn and George Browne, the guardian of whose estates is Walter G. Sibley, appointed by this court. Christine S. Frazier has four children, namely, Benjamin West Frazier, Jr., and Christine Frazier, of full age, and S. Ann Frazier and Agnes Frazier, minors, the guardian of whose estates is Walter G. Sibley, appointed by this court. F. Leonard Sibley has three

minor children, Louise Malcolm Sibley, Jean Sibley and Donald Malcolm Sibley, the guardian of whose estates is Walter G. Sibley, appointed by the Orphans' Court of Philadelphia County. The next of kin of the testatrix under the intestate law were Evelyn R. Sibley, her sister, and a brother, George Rice. The latter died on September 26, 1918, leaving a last will and testament on which letters testamentary were granted to John Rice and Helen R. Hammer, the executors therein named, on September 28, 1928, by the register of wills of this county. Said will is recorded in Will Book No. 49, page 280, and a copy was offered in evidence and is hereto attached. By its provisions, testator gave his entire estate to his wife, Isabella H. Rice. She survived him, and died on October 19, 1929, leaving a last will and testament and codicil thereto, on which letters testamentary were granted by the register of wills of this county to said John Rice and Helen R. Hammer, the executors therein named, on October 25, 1929. Her will is recorded in Will Book No. 71, page 130, and a copy was offered in evidence and is hereto attached. In the codicil she gave her entire residuary estate to her daughter, the said Helen R. Hammer, absolutely.

Clearly, the gift of the principal, by the codicil, upon the death of the surviving child of the life tenant, Evelyn R. Sibley, to be divided among the issue of said children then living, violates the rule against perpetuities and is as a consequence void. Mrs. Sibley might have had a child born after the death of testatrix and not in being at her death, which might have lived for a longer period than a life or lives in being and twenty-one years. The gift of the principal would not vest until the death of such child. The persons entitled to take the principal cannot be determined until such time. Feeney's Estate, 293 Pa. 273, we believe, is on all fours with the present case. In that case the testator, by will, left one-seventh of his estate in trust to pay the income to his son A. for life, and at his death to the children living at the time of the son's death for life, and upon the death of any of the said children of his son, the said child's proportionate share out of the corpus was to be paid to the residuary legatees or their heirs. The court, at page 284, stated: "A remainder cannot be limited to take effect upon a contingency, such as the death of a second life tenant more than twenty-one years after that of the first life tenant, if the second life tenant may be born subsequent to the death of the testator, even though he would be in esse during the life of the first devisee; and that is this case, insofar as the ultimate beneficiaries are concerned." Further cases establishing that the gift of the principal violates the rule against perpetuities are Geissler et al. v. The Reading Trust Co., Trustee, 257 Pa. 329, Kountz's Estate (No. 1), 213 Pa. 390, and Coggins's Appeal, 124 Pa. 10.

The gift of the principal under the codicil being clearly void, this brings us to the second question: Whether the gift by the codicil of the income to the children of Evelyn R. Sibley during their lives, upon which the void gift of the principal is suspended, is also void. In the present case the testatrix in her original will upon the death of her sister, the life tenant, directed an immediate division and distribution of principal between the sister's two daughters. The codicil substituted for an immediate distribution of principal a trust to pay the income to the children of the life tenant during their lives and suspended the division of the principal until the death of the surviving child, at which time it directed distribution among the issue of the children then living. Clearly, the intent and purpose of the codicil was to postpone until a period prohibited by the rule against perpetuities the division of the principal and the ascertainment of the persons who would then take. Under

these circumstances, it is obvious that the purpose of creating the life estates for the children of Mrs. Sibley was an inseparable part of the scheme to postpone the vesting of the principal until a period prohibited by the rule. The purpose of the testatrix shown in the codicil, in attempting to create a trust, was to control the distribution of her property beyond the period that the law allows, and the creation of the trust giving the income in the meantime to her sister's children was the scheme adopted to accomplish it. It is well settled that where the general scheme is to keep the estate entire for an unlawful period, and life estates are created for this purpose, the particular life estates must fall with the ulterior estate. Feeney's Estate, *supra,* is directly in point. There the testator left one-seventh of his estate in trust to pay the income to his son for life and at his death to continue the trust during the life of the children of the son living at the son's death, and upon the death of any of said grandchildren to pay over such grandchild's proportionate share of the corpus to testator's residuary legatees, who were his other six children, or their heirs. The court having held that the gift of the principal was too remote and that the son could not accelerate the vesting of the gift by renouncing his life estate, further held that the several life estates for the children of the son filling in the gap between the testator's death and the time when the ultimate beneficiaries would be ascertained, were essential parts of the illegal scheme of distribution and were void. It was held that that will did not fall within the doctrine of Whitman's Estate, 248 Pa. 285, 288, where life interests, prior to the distribution of the corpus of the estate, were held not to be affected by reason of subsequent limitations transgressing the rule against perpetuities, but that the will fell within the class of cases represented by Lilley's Estate, 272 Pa. 143, 153, which holds that where provisions creating particular estates in trust "are inseparable and dependent parts of the testator's main scheme to tie up his residuary estate in the ultimate gift, and thereby prevent the vesting until a date too remote, such provisions, including all the agencies or means designed to accomplish the desired and forbidden end, are void under the rule," citing Johnston's Estate, 185 Pa. 179; Gerber's Estate, 196 Pa. 366; Kountz's Estate (No. 1), *supra;* and holding that when a will shows such a condition of affairs, the life interests which support the illegal ultimate limitations fall with the latter, because they are all part of a common testamentary scheme violative of the rule against perpetuities, and that this result follows without regard to whether the testator with actual knowledge of the rule deliberately planned to defeat it. In such cases the point was held to be whether the general testamentary scheme under attack indicated a plan in which the dominant intent was not to create life estates particularly to benefit those who were to enjoy them, but to create such estates as incidental to and for the principal purpose of supporting remainders which might not vest until a time beyond that allowed by law. If it did, it was held that the whole scheme failed. Other cases to which our attention has been directed by counsel for Mrs. Browne and Mrs. Frazier, in which the Supreme Court held that the gift of the corpus of the estate was void and that the antecedent life estates were to be stricken down upon its failure, are: Kountz's Estate (No. 1), *supra;* Geissler et al. *v.* The Reading Trust Co., Trustee, *supra;* Ledwith *v.* Hurst, 284 Pa. 94; Johnston's Estate, *supra;* Gerber's Estate, *supra;* Lilley's Estate, 272 Pa. 143, and Crolius *v.* Kramer, 279 Pa. 275. In the present case we conclude that since the gift of the principal contained in the codicil violates the rule against perpetuities, the gifts of income to testatrix's sister's children for life fail because of the failure of the main purpose of the codicil.

The third question submitted for decision is: If the provision in the codicil providing for distribution of the principal violates the rule against perpetuities, this purpose of the codicil having failed, do the daughters of the sister take the principal under the provisions of the will? By the original will testatrix gave all her estate, real and personal, to her sister, and after her death, "said estate to be equally divided among my nieces, then living the daughters of my sister . . . share and share alike." The codicil directed that on the death of the sister "the principal of my estate which I have directed shall be equally divided among my nieces her daughters then living, shall not be so divided or distributed but shall be held in trust the income to be divided equally among the children of my said sister who may be then living. . . . In all other respects I ratify and confirm my said will." It will be noticed there is no express revocation. The direction not to divide among her nieces is directly coupled with the attempted gift in substitution which is void under the rule against perpetuities. "In all other respects" she ratifies and confirms her will. In Lutz's Estate, 9 Pa. C. C. 294, testator's will gave to his widow the entire income for life with a power of appointment over the principal. By a codicil he reduced the amount payable to the widow to the stipulated sum of $1500 per annum and directed that the balance be applied to the payment of certain encumbrances. Judge Penrose held that the effect of the codicil was to direct an unlawful accumulation and that, the purpose for which the gift in the will was cut down having failed, the original gift remained unaffected. He stated, at page 298: "This is the doctrine of what the text-books speak of as dependent relative revocations, the principle of which, as expressed by Lord Alvanley in Ex parte Ilchester, 7 Ves. 372, is that 'where a disposition is made, so as to have legal effect, and afterwards another, by which the former would be revoked, but the other substituted, and it is evident that the testator, though using the means of revocation, could not intend it for any other purpose than to give effect to another disposition, though if it had been a mere revocation, it would have had effect, yet the object being only to make way for another disposition, if the instrument cannot have that effect, it shall not be a revocation.' " While there are no Pennsylvania cases that have raised the problem presented in the form that arises in the present case, nevertheless, there are two comparatively recent English decisions, one by the House of Lords and the other by Neville, J., that are exactly in point. In Bernard's Settlements, Bernard v. Jones, [1916] 1 Ch. 552, the testatrix had, under a marriage settlement, a testamentary power to appoint the funds to all or any of her sons and daughters. By her will she appointed the funds to six daughters in equal shares absolutely. By a codicil, after reciting her desire that the share of her daughter, M, should not be paid to her but should be held in trust, the testatrix revoked the appointment "in so far (but no further) as the same" gave to M an absolute interest therein and appointed the share which M would have been entitled to but for these presents to trustees in trust for her for life with a gift over after her death to her sisters. These trusts offended the rule against perpetuities and were void. The court held that the trusts of the codicil being void, the original appointment to M absolutely by the will remained in force. Similarly, in Ward v. Van der Loeff et al., [1924] A. C. 653, testator's will gave to his wife a power of appointment among the children of his brothers and sisters, and in default of appointment he gave the residuary trust funds to all the children of his brothers and sisters. By a codicil he revoked the power of appointment given to his wife and provided that after her death his trustee should hold the residue in trust for all or any of the children of his brothers

and sisters living at the death of his wife or born at any time afterwards, before any of such children for the time being in existence attained a vested interest and, being a son or sons, attained the age of twenty-one years, or, being a daughter, attained that age or married. It was held that the gift in the codicil was void for remoteness and that the gift being inoperative there was no implied revocation of the gift of the will and that the latter took effect. Viscount Haldane, L. C., having held that the gift in the codicil was void, said (page 661): "The next question is whether the codicil, although inoperative to this extent, was yet operative to revoke the gift to children of brothers and sisters contained in the will. After consideration, I have come to the conclusion that it was not so operative. There is indeed a revocation expressed in the codicil, but it is confined to the power of appointment given to the wife. It does not extend to what follows. That is, in terms, an attempt at a substantive and independent gift, and as it is wholly void, I think, differing on this point from the Court of Appeal, that the provision in the will stands undisturbed. There is nothing else in the codicil which purports to affect it. It can make no difference that the class of children is a new and different class if the constitution of the new class is wholly inoperative in law. If it fails, then unless an independent and valid intention to revoke has been independently of it expressed, no revocation can take place. There is no such independent expression of intention here." Viscount Cave said (page 665): "No doubt, if the gift in the codicil had taken effect, it would have superseded and to that extent would have impliedly revoked the gift in the will; but the implication of revocation is found only in the terms of the substituted trust, and if that trust falls to the ground the implied revocation falls with it. The substituted gift, like the original, is in favour of nephews and nieces of the testator, although the particular class of nephews and nieces who are to take is modified; and I cannot on the words of this codicil attribute to the testator an intention of wholly revoking the trust in the will even though the modification intended by the codicil should fail to take effect." A Pennsylvania case somewhat similar to the present one is Worrell's Estate, 11 D. & C. 364 (Orphans' Court of Philadelphia County, 1928). There by a will and codicil testatrix had bequeathed $6000 and certain articles to named persons. A subsequent codicil with only one witness gave $5000 each to two charities and provided "this is codicil to be added to n y last Will in place of the one that is there now—that I request to be destroyed." The court held that the subsequent codicil which failed because not properly attested was only conditional in revoking the preceding codicil, and the legatees named in that codicil were entitled to take. Van Dusen, J., said (page 366): "The question remains whether the revoking clause in the third codicil is conditional on the validity of the dispositive parts of that instrument.

"Testatrix does not expressly make such a condition. She says that she displaces one gift by another, but does not say she displaces the first only for the second, an intention which the testator, in substance, declared in McDermott's Estate, 1 D. & C. 789, and the contrary of which he declared in Melville's Estate, 245 Pa. 318, and Lutheran Congregation of Union Churches' Appeal, 113 Pa. 32.

"Not being able to determine with certainty the intention of the testatrix, we must rely upon rules, and the rule is thus stated in 1 Jarman on Wills 344 (6th ed., 169): 'If, on the other hand, the new devise be ineffectual, on account of the attestation being insufficient for a devising, though sufficient for a revoking, will, the revoking clause becomes inoperative on the principle before noticed that the revocation is conditional and dependent on the efficacy of the

admitted new disposition, and that failing, the revocation also fails; the purpose to revoke being considered to be, not a distinct independent intention, but subservient to the purpose of making the new disposition of the property; the testator meaning to do the one so far only as he succeeds in effecting the same. But it seems that, if the second devise fails, not from the infirmity of the instrument, but from the incapacity of the devisee, the prior devise is revoked.'

"This is quoted with approval in Melville's Estate, *supra*, the last sentence being given as authority for the second ground of decision in that case. There, Stewart, J., also said: 'They [the authorities] all recognize a clear distinction between failure of the dispositive part of the revoking instrument because of a defect in the instrument and failure because of extrinsic circumstances; and there is entire concurrence of view that in the former case the revocation is inoperative, while in the latter it must prevail.' The same in substance is said in Price *v.* Maxwell, 28 Pa. 23.

"Neither of these cases, nor any other in our own State to which we have been referred, involved instruments defectively executed, and the approval of the first branch of the rule may be characterized as *dictum*. It is authoritative, however, and seems to us to carry out what probably was the intention of the testatrix. We willingly follow its guidance, and it controls this case." In Rudy *v.* Ulrich, 69 Pa. 177, a will was offered for probate. To defeat probate, a later will which expressly revoked earlier wills was offered in evidence. It was shown that in an earlier proceeding the second will had been held invalid because procured by undue influence. The court held that the second will had no effect in revoking the first. Sharswood, J., said (page 183): "It cannot be known with any degree of assurance, sufficient to justify a legal judgment, that where there is a clause of revocation in a will making a certain disposition of property, that the testator really intended to revoke a prior will making a different disposition, except for the purpose of substituting in place thereof that contained in the second will. It would be making the testator die without any will at all, when it was clearly his intention, as drawn from his executing a paper purporting to be a will, not to do so." In the present case the failure of the dispositive part of the codicil is the result of a defect appearing in the instrument itself, viz., a disposition prohibited by the rule against perpetuities. On principle, there is no ground for distinguishing between an instrument defectively executed and one which is defective because the distribution directed is prohibited by law. The defect is intrinsic in both cases. It is perfectly clear that the sole purpose of testatrix here, in directing that the principal should not be distributed to the nieces as provided in the will, was in order to create a trust with particular life estates in the income to support contingent gifts in remainder which were too remote, a purpose which has entirely failed. The substitutionary gift having failed, the intention of the testatrix to be implied under the circumstances is that the provisions of the original will giving the principal to the daughters should remain in force. Clearly, the only intent with regard to the gift to the nieces was to supersede it with the substitutionary gift which is void. Had the testatrix known that the affirmative disposition of the property by the codicil was void, she would have intended her original directions to be carried out. Unless this construction be placed upon the codicil, there would be an intestacy as to the principal, which in such case would go one-half to the estate of her sister, Mrs. Sibley, and the other half to the estate of her brother, George Rice. This is a result which clearly she did not intend or desire. Both the will and codicil show that she preferred the children of

her sister Evelyn to her other next of kin. Since the codicil wholly fails in its purpose to dispose of the estate after Mrs. Sibley's death under a rule of law that is apparent on the face of the instrument, the doctrine of dependent relative revocation applies, and the gift of the principal to the daughters of Evelyn R. Sibley as contained in the will remains in full force and effect. We believe such a result most nearly carries out the testatrix's intent. We, therefore, conclude that since the provision in the codicil providing for the disposition of the principal violates the rule against perpetuities, and since the prior life estates of the codicil upon which this gift is suspended have failed, the terms of the will giving the principal to the two daughters of the sister of the testatrix remain in force, and the principal will be awarded in accordance with the testatrix's expressed wishes contained therein. . . .

And now, February 4, 1930, this adjudication is confirmed *nisi*. If no exceptions are filed within ten days from this date the adjudication is confirmed absolutely according to rule, and counsel for the accountant will forthwith prepare schedule of distribution, certify that the same is correct and in conformity with this adjudication, which, when approved by the court, will be attached to and form part of the same, and Christine S. Frazier, executrix as aforesaid, will pay the distributions herein awarded.

From Aaron S. Swartz, Jr., Norristown, Pa.