## McCreary's Estate

Before Van Dusen, P. J., and Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Lewis H. Van Dusen, Jr.,* and *Leslie M. Swope,* for exceptants.

*C. C. Savage, Jr., Maurice Heckscher, Henry C. Remick,* and *Geoffrey S. Smith,* contra.

STEARNE, J., June 11, 1937.—A majority of the court agree with the conclusions of the auditing judge. The question raised on exceptions is whether the court should rule upon the validity of remainders where valid life estates, protected by separate use and spendthrift trusts, are still existing. The auditing judge ruled that such consideration was premature.

We again summarize the facts in order to focus consideration upon the controverted legal principles:

In 1880 settlor, a single woman of Philadelphia, about to enter marriage, deposited the trust res herein accounted for with Philadelphia trustees, executing a formal deed of trust. Under the deed the trustees were to pay settlor the net income for life, and upon settlor's death to apply the fund as settlor should appoint by her will. Settlor contemplated her failure to appoint as well as a defective appointment. The deed provided that in default of appointment, "or as to any part of said estate as to which the appointment may for any reason fail to take effect," then the estate was to pass to settlor's contemplated husband and her issue, if any, and, if not, to her next of kin.

Settlor married and lived until 1935. Her husband predeceased her. She left surviving two daughters, Mabel and Dorothy, who are still living. At the time of her death settlor was a resident of Baltimore, Md. Settlor left a will wherein she exercised the power of appointment.

Under the terms of the will settlor directed that the estate over which she possessed a power of appointment should be added to and considered part of her residuary estate. Such residuary estate was placed in trust, with Maryland trustees, to pay one half the income therefrom to her daughter Mabel for life, and the remaining half of such income to her daughter, Dorothy, for life, both protected by separate use and spendthrift provisions.

Upon the death of each daughter, such share of income is payable "to the child, children or descendants of the daughter living at the daughter's death." This income, curiously enough, is to be paid to such daughter's issue "until the death of the last to survive of [daughter's] children who may be living at the time of [settlor's] death." Thereafter the corpus is to be transferred to the "child, children and descendants" per stirpes of each daughter.

The will further provides that, if the daughter Mabel should leave but one child or descendants of one child, then the trust for such child or its descendants should be reduced one half, and the said half added to the trust for Dorothy.

In addition to the provision in the deed as to disposition of such part of the trust estate as may fail to take effect, the will contains the following provision:

"Should, however, it be held by a Court of competent jurisdiction and of last resort in a proceeding in which the question of the validity of the trust created by this clause of my Will shall be of an issue, that said Trust is void for violating the rule against perpetuities then it is my Will and I direct that my Trustees or the survivor of them shall hold *this* portion of my estate in trust, to pay over and deliver the same to and among such person or persons as may *at the time this trust shall be decided void as aforesaid,* be entitled to receive the net income thereof, and in the same proportions, absolutely and free from further trusts." (Italics supplied.)

Counsel for the daughter Mabel contends that the appointed estate is void because it violates the rule against perpetuities, and therefore the fund, under the alternative appointment, should be awarded to the two daughters in fee.

The auditing judge in a most carefully considered opinion ruled that the appointed life estates to the daughters, protected by separate use and spendthrift provisions,

were unquestionably valid. Since both daughters are still living, it was premature for him to rule upon the validity of the succeeding estates. He cited and relied upon Whitman's Estate, 248 Pa. 285, Lockhart's Estate, 267 Pa. 390, and Warren's Estate, 320 Pa. 112. A majority of the court are of opinion that these rulings were correct.

Exceptant points to Johnston's Estate, 185 Pa. 179, where a trust was stricken down for remoteness, despite an otherwise valid preceding life estate. To Johnston's Estate we may add Feeney's Estate, 293 Pa. 273. But as pointed out in Warren's Estate, supra, at page 121, in cases such as these the life estate was merely incidental to and was set up for the purpose of supporting void remainders. In these cases there is so interwoven a scheme to circumvent the operation of the rule that the precedent life estate, or estate for years, will not be saved, and the whole trust is stricken down. Such element is absent in the instant case. Settlor was providing for her daughters and their issue. Manifestly there was no attempted fabrication to evade the rule. In fact there exists a provision as to the disposition of the estate if the disposition is held to be ineffectual. Despite what may be the ultimate determination as to the validity of the succeeding estates, we see no reason for disturbing the life estates to the daughters, so protected by separate use and spendthrift provisions.

The validity of the succeeding life estates in the issue of the daughters, as well as the remainders, is debatable. It may well be that the gift of life estates to issue of the daughters may be entirely void, as too remote, as the daughters could possibly have issue born over 21 years after the death of settlor. On the other hand, the curious provision that such income should be paid to the issue until the death of the last surviving child of the daughters living at the time of settlor's death, might, under Warren's Estate, supra, have some effect upon a judicial interpretation. The auditing judge properly ruled that it is premature to pass upon the validity of such remainders.

But even if the remainders are held to be void as too remote, nevertheless, the life estates in the daughters with separate use and spendthrift trusts are unquestionably valid. A parallel situation arose in Ewalt v. Davenhill et al., 257 Pa. 385. The Supreme Court, citing Whitman's Estate, supra, refused to tear down the equitable life estates, so protected by separate use and spendthrift trusts, even where the life tenants, upon the invalidity of the remainder, were the persons entitled to take. There can be no coalescence of an equitable life estate, with separate use and spendthrift provisions, with a legal estate in remainder: Wharton's Estate, 15 D. & C. 175; McCrea's Estate, 19 D. & C. 651; Ewalt v. Davenhill et al., supra.

Mabel, the exceptant, who has but one child (her sister Dorothy has three), urges that it will be unjust to uphold the life estates and not review the validity of the succeeding estates because, in the event that the remainders are determined to be void, the alternative disposition works an inequality and "shipwrecks" settlor's whole testamentary scheme. Counsel for exceptant in their able argument portray a rather dismal picture. We are not convinced that this enters into the present consideration. But even if it should, it appears most improbable that upon the death of a daughter, and the ultimate determination of the invalidity of the successive estate, this share would not pass to the daughter's estate.

Nor will we rule upon the provision in the will as to the diminution of the share to Mabel's issue in the event that she dies leaving but one child or issue of a single child. This may well be void for remoteness. But, here again, such consideration must await the termination of the valid life estates.

Counsel for exceptant earnestly urges that there are alternate dispositions, both in the deed and will, should the trust prove void. He maintains that the trust is void, with the exception of the life estates, and therefore the alternative appointment is immediately effective. He pre-

supposes that settlor intended the alternative disposition to become operative should any portion of the trust be void. This, in our opinion, is error. The deed itself states: "*As to any part* of my estate as to which the appointment may for any reason fail. . . ." (Italics supplied.) The will (clause 19) reads that if the trust is void for violating the rule against perpetuities then the trustees should hold "this portion" of the estate. As we view this language, settlor only disposed, by alternative appointment, of that portion or part of the appointive estate which might ultimately be decreed void or inoperative. There is nothing in this language to indicate an intention that, if any of the trust provisions fail, then every portion of the trust becomes ineffectual and passes to the daughters absolutely. We are obliged to sustain, wherever possible, that part of the appointment which is valid.

We are of opinion, however, that where, as here, the power of appointment is exercisable only by will, the donee is not the owner and cannot appoint to herself. No appointment can be made until she dies. It is also for this reason that the validity of any gift must be referred in point of time to the creation of the power: Cox et al. v. Dickson, 256 Pa. 510. The law of the situs of the subject of the power controls the execution of the power: Bingham's Appeal, 64 Pa. 345; Aubert's Appeal, 109 Pa. 447; Lawrence's Estate, 136 Pa. 354. The estate is a Pennsylvania trust. When settlor appointed the fund and directed that it be considered as part of her own residuary estate and administered by Maryland trustees, nevertheless, the fund still remains a Pennsylvania trust. Section 57 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, relating to foreign fiduciaries, applies. Security must be entered by the Maryland trustees. As one of the trustees is a corporate fiduciary, upon sufficient proofs submitted to the auditing judge it may enter its own bond for itself and cotrustee.

Exception no. 4 is sustained in part; all the other ex-

ceptions are dismissed, and the adjudication, as modified, is confirmed absolutely.

VAN DUSEN, P. J., and LADNER, J., dissenting.—We are unable to agree with the disposition made by a majority of the court of the exceptions in this case.

The facts need not be repeated, as they are concisely but fully stated in the majority opinion.

The rule that a valid life estate created in a trust should be upheld even though the remainder may be void as in conflict with the rule against perpetuities, and its necessary corollary that the court will not ordinarily pass upon the remoteness of the remainder until the valid life estate falls in, is too firmly implanted in the Pennsylvania law to be questioned. However, an examination of the authorities indicates that the reason for the rule is the desire of the courts to carry out testator's intent as far as practicable, and this is always done unless the valid estates and the invalid are so intricately interwoven as to be incapable of separation, or unless the dominant intent of testator appears to be a desire to have his testamentary scheme upheld as a whole: Johnston's Estate, supra; Lilley's Estate, 272 Pa. 143; Feeney's Estate, supra.

Where there is a clearly expressed intent gathered from the will that the creator of the trust desires the whole plan of distribution to be upheld, or not at all, the reason for the rule disappears; to then proceed to uphold even an admittedly valid life estate in the face of such expressed intention of testator is to adhere to the mere form when the foundation of the rule is gone.

An examination of the cases cited in the majority opinion and those cited in brief of counsel against the exceptions shows that in none of them has the creator of the trust by express language indicated, as here, that an alternative disposition should take effect unless the whole trust could be upheld. Is there such an intent clearly expressed in the will before us? We think so. It seems to

us that the last paragraph of item 19 of the will by which the appointment was exercised indicates just such an intent. This item we quote in full, in order that its context may be used to aid the construction to be placed upon the final paragraph:

"Item 19. Whereas by a deed dated the 13th day of April, 1880, I granted and conveyed the property therein described unto George D. McCreary and the Fidelity Insurance Trust and Safe Deposit Company of Philadelphia, in trust for the uses and purposes therein set forth and especially in trust, after my death to convey and assign said trust estate and property to such person or persons, in such proportions, for such estates and for such uses and purposes as I might by my Will appoint, and whereas I desire, so far as the law permits, to make the same disposition thereof as I have hereinbefore made of my residuary individual property.

"Now, Therefore, in execution of the power so reserved to me in said deed, or of any other power which I may possess in the premises, I do hereby Will, direct, name, limit and appoint that the estate and property held in trust under said deed at the time of my death shall be conveyed, assigned, transferred, paid over and delivered unto said Tilghman G. Pitts and Safe Deposit and Trust Company of Baltimore, Trustees, and the survivor of them, and the successors of them, the same to be added to and for the purposes of this my Will considered as though it constituted part of the rest, residue and remainder of my own personal estate, and I do hereby give, devise and bequeath the same unto the said Tilghman G. Pitts and Safe Deposit and Trust Company of Baltimore, Trustees, to be held by them in trust for the same uses and purposes in all respects with the same limitations over and with and subject to the same powers as I have hereinbefore set forth and expressed in respect to the two trusts hereby created of my own residuary estate.

"Should, however, it be held by a Court of competent jurisdiction and of last resort in a proceeding in which

the question of the validity of the trust created by this clause of my Will shall be of an issue, that said Trust is void for violating the rule against perpetuities then it is my Will and I direct that my Trustees or the survivor of them shall hold *this portion of my estate* in trust, to pay over and deliver the same to and among such person or persons as may at the time this trust shall be decided void as aforesaid, be entitled to receive the net income thereof, and in the same proportions, absolutely and free from further trusts." (Italics supplied.)

The words italicized in the last paragraph of this item, namely, "this portion of my estate", to us mean that part of her estate as to which she had reserved the power to appoint in her deed of trust. We cannot accept the suggestion of the majority opinion that the word "portion" in the last paragraph of item 19 refers to the part of the appointive estate which might be decreed void. Such interpretation is at variance with the preceding paragraphs of this item which make plain her intention to include in the trust created by the prior items of the will that part of her estate of which she was the donee under the deed of 1880.

Testatrix sensed that, while the trusts set up in the will might be good as to the nonappointive part of her estate, they nevertheless might prove too remote as to the appointive portion of her estate, because the period of remoteness as to that would have to be measured from the date of the deed, 1880, when the only life in being was her own. She expressly directed, therefore, that, if the trust should be invalid as violating the rule against perpetuities, the same was to be delivered to the persons entitled to receive the net income thereof, absolutely "free from further trusts". *The trusts then stricken down cannot be the void limitations, for they are gone already.* The trusts mentioned must be those which otherwise would hamper the life tenants. Does not testatrix by these words make it clear that if she cannot have the plan of disposition carried out the way she made it, she prefers to abandon it as

a whole and prefers that her daughters inherit their respective shares, absolutely. It is not really a case of merger, but an unrestricted gift in fee "absolutely and free from further trusts".

So interpreted, the will is free from the possible complications pointed out by counsel for exceptants, which would follow if the decision upon the validity of the trust were postponed until the life estate fell in. Whenever one of the daughters dies an adjudication striking down the remainders would leave the surviving daughter as the "person . . . at the time this trust shall be decided void as aforesaid . . . entitled to receive the net income thereof". In other words, the children of the daughter first dying would be disinherited. Notwithstanding the fact that testatrix certainly never intended such a result, nevertheless, if the decision as to the validity of the remainders is postponed to the death of one daughter, such disposition becomes inevitable.

Proceeding now to a consideration of the validity of the limitations created by the will, it must be remembered that the lives within which the estates are to vest must have been "in being" in the year 1880 when the trust was created: Cox et al. v. Dickson, supra. The only life *then* in being was that of settlor herself; while the life estates to her daughters are good because they vest at her death, the gifts of income and principal to the daughters' children will vest only at the daughters' deaths, because it cannot be determined until then how many children they will have. It is urged that the vesting takes place at the death of the grandchildren born in settlor's lifetime, but those are lives that cannot be considered, for they were not in existence in 1880.

It is true also that a gift to the grandchildren who were born in Mrs. Paine's lifetime would be good if it vested at Mrs. Paine's death, but the gift is not to them alone. Their interests may be diminished by the birth of other brothers and sisters, and it is possible also, though perhaps not clear, that their interests are contingent upon surviving

their mothers. Under any construction the interests of these grandchildren will not be determined and therefore cannot vest until their respective mothers' deaths, and that is too remote a period. "And if the gift is to a class, and it is void as to any of the class, it is void as to all": Coggins' Appeal, 124 Pa. 10, 30; Lockhart's Estate, 306 Pa. 394. See also a case in which the facts greatly resemble those before the court, Lammot v. Home of the Merciful Saviour, 68 Pa. Superior Ct. 597.

We would sustain the exceptions.