Fanny M. Dravo and Fidelity Trust Company, Surviving Executors of the Will of Francis R. Dravo, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 78375. Promulgated March 24, 1936.

*William F. Knox, Esq.*, and *William S. Moorhead, Esq.*, for the petitioners.

*George D. Brabson, Esq.*, for the respondent.

OPINION.

Leech: The respondent determined a deficiency of $4,694.16 in income tax of Francis R. Dravo, for the calendar year 1931. The taxpayer died February 26, 1934. The petitioners are the executors of his estate. The only issue is the propriety of the action of respondent in including in the income of petitioners' decedent the sum of $23,007.66. This amount was income received in 1931 by a trust, created by the decedent, which was not distributed to the primary beneficiary but was retained by the trustees as an addition to corpus under the provisions of the trust.

We find the facts as formally stipulated. Briefly stated, these facts are that petitioners' decedent, a resident of Sewickley, Pennsylvania, by deed dated January 17, 1931, transferred irrevocably to himself, his brother, Ralph M. Dravo, and the Bank of Pittsburgh National Association, as trustees, certain property, consisting of com-

mon and preferred stock and bonds of the Dravo Corporation. By the terms of the trust deed the trustees were given broad powers to sell, reinvest, and otherwise deal with the trust property. It was provided that all or so much of the trust income as the trustees, in the exercise of their discretion, might determine, should be paid to Fanny M. Dravo, wife of the settlor, during her lifetime, with further power in the trustees to advance portions of the principal to this beneficiary as they might determine. All income of the trust, which the trustees in each year during the lifetime of Fanny M. Dravo had, in the exercise of their discretion, not distributed to the latter but had accumulated, was to be added to the corpus of the trust.

The trust deed further provided that upon the death of Fanny M. Dravo the corpus of the trust, as it then existed, including such additions of income accumulated by the trustees, as had been made, was to be divided into three equal shares designated as "A", "B", and "C." The income from a portion of share "A" was to be paid to the settlor during his life and, upon his death, the principal of such portion was to be paid to certain designated charities. Other portions of share "A" were to be distributed to certain individuals under conditions not material here, since the settlor had no vested or contingent interest in such portions.

The trustees were directed to pay the income from share "B" to the settlor during his lifetime, upon his death, the principal to go to such charities as he might designate in writing. The designation was formally filed by him under the trust, prior to the close of the calendar year 1931, directing payment of the remainder interest in this share to Lehigh University, Valley Hospital, and St. Barnabas Free Home.

The trust deed further directed the trustees, at the death of the wife, to distribute 75 percent of the principal of "C" among such employees of the Dravo Corporation and, in such individual percentages, as the settlor or his brother and cotrustee, Ralph M. Dravo, should direct, by filing a written list with the trustees. It was specifically provided that the settlor and/or Ralph M. Dravo might, at any time prior to the death of the primary beneficiary, Fanny M. Dravo, change the list of employee beneficiaries and "revise said certified list so as to divest any certified officer or employee or his estate from the right to participate herein." It was further directed that no list of officers or employees of the Dravo Corporation, certified to the trustees as beneficiaries of this part of share "C", should include the name of the settlor.

The remaining 25 percent of share "C" was to be paid to the Dravo Management Co. to be distributed by it among employees of the Dravo Corporation in such proportions and upon such terms as the

directors of the Dravo Management Co. or, under certain conditions, the Dravo Corporation, should determine.

Before the close of the calendar year 1931, the Bank of Pittsburgh National Association resigned as trustee and no new trustee was thereafter appointed in its place. The net income received by the trustees during the calendar year 1931 was $31,507.66, consisting of $13,500 dividends and $18,017.66 interest. Of this amount, $8,500 was distributed by the trustees to Fanny M. Dravo, the primary beneficiary, and included by her in her individual income tax return for that year. The balance of the income, or $23,007.66, was accumulated by the trustees and added to the corpus of the trust, as directed by the trust instrument. This amount was reported by the trustees in their return for the calendar year 1931 and the tax thereon was paid. Respondent has taxed it to the decedent.

The respondent did not question the legality of the trust. He contends that the powers granted the trustees to accumulate income, in their discretion, coupled with the control given the settlor as trustee, were such as to make trust income accumulated during the year here in question taxable to the settlor, under section 167 of the Revenue Act of 1928. This section provides:

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called "charitable contribution" deduction), such part of the income of the trust shall be included in computing the net income of the grantor.

It is not disputed that before the close of the first year of the existence of the trust, which is the year here in controversy, one of the three trustees resigned, the vacancy was not filled and that the discretion granted to the trustees, thereafter was subject to exercise by the settlor, one of the trustees, and his brother, who was not a beneficiary of the trust. Respondent apparently argues that the power granted to accumulate income, where such power could be exercised by the settlor, as trustee, coupled with broad powers of control and administration of the trust estate, is sufficient to include the accumulations by the trustees within the scope of the above quoted section. He further contends that the interest of the settlor in the trust, represented by his right to enjoy certain portions of the trust income after the death of the primary beneficiary, since the trust corpus could be augmented by accumulations of income during the life of the primary

beneficiary, which would result in the settlor receiving a larger income because of the accumulations, necessarily characterizes such accumulations as made "for the benefit of the grantor" and thus within the purview of the quoted section.

The petitioners, on the other hand, insist that, although the settlor, as trustee, had the right, in his discretion and that of his fellow trustee, admittedly not a beneficiary of the trust, to accumulate income, the trust instrument expressly directed that such accumulations should be added to corpus. Petitioners urge that the settlor had no power, as trustee, to distribute to himself any portion of such corpus nor had he any interest in this corpus other than his right to receive the *income* produced from a portion of it, after the death of his wife, the primary beneficiary. It is the petitioners' position that only income, accumulated within the discretion of the settlor as would or might be distributable ultimately to him, is within the intendment of the above quoted section. They contend that none of the accumulated income here involved could, in any event, be distributed ultimately to the settlor and, consequently, no portion of it is taxable to him under that section.

It is true that the caption of section 167 of the Revenue Act of 1928 reads "INCOME FOR BENEFIT OF GRANTOR." But the section provides that the only income taxable to the grantor of the trust under this section is income which "may * * * be distributed to the grantor or be held or accumulated for future distribution to him * * *." The explicit and definite wording of this provision affords no justification for extending its boundaries to include income which, under the terms of the trust instrument or as a result of the exercise of a reserved power, never can be "distributed" to the grantor. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85. The fact that he may receive income produced from the investment of the accumulations, does not make such accumulations *distributable* to him. Respondent's citation of our opinion in *Arthur J. Morris*, 33 B. T. A. 241, is not in point. In that case the trust was for a limited period. The trustees, including the grantor, had a discretionary right to accumulate income and to add it to corpus. The grantor had a reversionary interest in such corpus.

If, under the trust deed here involved, no distribution of the accumulated income could be made, in any event, to the settlor, Francis R. Dravo, either as accumulated income, or in a distribution of corpus to which it had been added, we think such income is not taxable to him under section 167. *Preston R. Bassett*, 33 B. T. A. 182; *Arthur J. Morris, supra.*

The trust instrument discloses that the corpus of the trust, as it would exist on the death of Fanny M. Dravo, including the additions thereto by reason of the accumulation of income by the trustees in

the exercise of their discretion, was to be divided into three equal parts. The disposition to be made of parts "A" and "B" shows clearly that none of the corpus of those parts, and consequently, no portion of the accumulated income included thereon, was distributable to Francis R. Dravo, nor could any action of his change the conditions of the trust so as to make such corpus distributable to him.

With respect to the remaining one-third share of the corpus of the trust, designated as share "C", a different condition exists. It is noted that 75 percent of this share, which included one third of the accumulations made by the trustees from income, was to be distributed to certain employees of the Dravo Corporation. In reference to this portion of "C", the settlor, Francis R. Dravo, reserved to himself the right to revise the list of beneficiaries "so as to divest any certified officer or employee or his estate from the right to participate herein." The trust barred decedent from *that list* of beneficiaries. But no provision is made for a distribution of "C" by the trustees upon failure of the settlor to designate the beneficiaries or upon his removing from the certified list of beneficiaries the names of all theretofore designated to receive the fund.

It necessarily follows, we think, that, as to this 75 percent of one third of the trust corpus, the settlor reserved powers to himself sufficient to revoke the trust as to the remainder interest, in which case the rule is well recognized that the trustees would hold such interest under a resulting trust for the benefit of the settlor. As the court said in the *Union Trust Co. of Pittsburgh* v. *McCaughn*, 24 Fed. (2d) 459: "Where an express trust fails because of the want of a named beneficiary a resulting trust arises in favor of the donor." See also *In Re Lillys Estate*, 272 Pa. 143; 116 Atl. 392; *Sanford* v. *Van Pelt*, 314 Mo. 175; 282 S. W. 1022; *Wittfield* v. *Forster*, 124 Cal. 418; 57 Pac. 219; *Harris Trust & Savings Bank* v. *Morse*, 238 Ill. App. 232; *Blunt* v. *Taylor*, 230 Mass. 303; 119 N. E. 964; *Davison* v. *Wyman*, 214 Mass. 192; 100 N. E. 1105; *Clark* v. *Campbell*, 82 N. H. 281; 133 Atl. 166.

Petitioners' decedent, creator of the pending trust, possessed the power to accumulate income of the trust in the exercise of his discretion with that of one not a beneficiary of the trust. That decedent, under the trust instrument, reserved a power sufficient to cause a portion of the income so accumulated to be distributed to him upon the death of his wife, the primary beneficiary. It is not material that decedent did not exercise this power nor that the fund accumulated could be received by him only if he survived his wife. During the taxable year he was in possession of the power. As this Board said in *Charles Kaplan*, 26 B. T. A. 379; affd., *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401:

In our opinion the power reserved by petitioner to himself as trustee to accumulate the trust income for future distribution to himself as the grantor in case he survived his wife, brings the trust income within the scope of section 219 (h), *supra*. The word "may" as used in that section clearly is used in a permissive sense only and is not equivalent to "shall." It contemplates a trust wherein the grantor retains dominion over the trust income to the extent of diverting it to himself. The declaration of trust before us reserved to the petitioner, as grantor and trustee, full power to bring about exactly the possibility contemplated by the statute. We find no error, therefore, in the respondent's determination that the trust income was taxable to the petitioner individually.

As to the remaining 25 percent of "C", the trust deed did not preclude the Dravo Management Corporation or the Dravo Corporation, either of which, in the alternative, had absolute authority under the trust to select the participants and their participation, from including the decedent in those participants. The trust instrument contained that inhibition as to 75 percent of "C."

If decedent controlled either such corporation, certainly he could have exercised that control by causing his employment by the Dravo Corporation and its distribution of part or all of this fund to him.

The corporation bore the same name as decedent. The corpus of the trust was composed entirely of securities of that corporation. Apparently the considerable block of common stock included in the trust corpus was not all of that stock decedent owned. However, it is not clear that the decedent did control either corporation. But respondent has determined the pending deficiency upon the theory that decedent possessed the power to cause distribution to him, at his wife's death, of the disputed income, including the specific portion now under discussion. In any view of the record, control by decedent of either or both of these corporations is not contradicted. We must, therefore, premise our conclusion on its existence. The result reached as to 75 percent of "C" would thus follow, as to this remaining 25 percent, upon authority of *Charles Kaplan, supra*.

Accordingly, we conclude, one third of the contested income is taxable to petitioners' decedent.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK dissenting: The intent of the donor, as evidenced by the trust instrument, was that none of share "C" should come to him. The prevailing opinion goes too far in taxing one third of the income to him on the theory that he might outlive his wife, break faith with the employees whom he intended to benefit, and thus recover the income for himself. The petitioner has made a prima facie case as to the 25 percent of this share.

VAN FOSSAN, MATTHEWS, and MELLOTT agree with this dissent.