FRANCES S. WILLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99980. Promulgated May 27, 1941.

*Harry G. Gault, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

585

OPINION.

BLACK: The Commissioner, in including the net income of the Frances S. Willson trust as a part of petitioner's net income for each of the years in question, relies upon section 167 (a) of the Revenue Act of 1936, printed in the margin.[1]

Petitioner, in contending that the income of the trust is not taxable to her, relies upon two propositions as follows:

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction);

then such part of the income of the trust shall be included in computing the net income of the grantor.

(1) That the part of the trust income used in 1936 and 1937 to pay premiums on insurance policies insuring the life of petitioner's husband, George C. Willson, which policies were payable to the trustee, was not taxable to petitioner as grantor of the trust which produced the income.

(2) That the part of the 1936 and 1937 trust income which remained after the payment of insurance premiums and was accumulated and added to trust corpus was not taxable to petitioner as grantor of the trust which produced the income.

We shall take up and discuss these two propositions in their order.

(1) To sustain her first proposition, petitioner cites *Lucy A. Blumenthal*, 30 B. T. A. 591; *Gail H. Baldwin*, 36 B. T. A. 364. These cases support petitioner.

In the *Blumenthal* case the policies of insurance were not taken out on the life of the settlor of the trust but on the life of her husband. The policies were payable to the trustee, who was to collect the proceeds upon the death of the insured and use the money as a trust fund, the income from which was to be paid to the settlor and her children. Under such circumstances we held that portion of the income of the wife's trust which was to pay the insurance premiums on the policies of insurance taken out on the life of Sidney Blumenthal, Lucy's husband, was not taxable to her. On the other hand, we held that the portion of the income of the trust which was used to discharge the liability of Lucy to the Guaranty Trust Co. of New York on a collateral note for money borrowed was taxable to her. Our decision on this latter point was affirmed by the Supreme Court *per curiam* in *Helvering* v. *Blumenthal*, 296 U. S. 552, following *Douglas* v. *Willcuts*, 296 U. S. 1. No appeal was taken by the Commissioner from our decision on the first point.

It should be noted that the income of the trust in the instant case was not to be used to discharge any legal obligation of the settlor, as was the case in *Douglas* v. *Willcuts*, *supra*, or the $31,500 indebtedness of Lucy A. Blumenthal in the *Blumenthal* case.

On authority of *Lucy A. Blumenthal*, *supra*, and *Gail H. Baldwin*, *supra*, we sustain petitioner on this point.

(2) In support of her second proposition, petitioner cites *Fanny M. Dravo et al., Executors*, 34 B. T. A. 190. In the *Dravo* case, under the terms of the trust indenture, the income could be accumulated and added to corpus and the income only on the aggregate corpus was distributable to the grantor, upon his wife's death. Under these conditions we held that the income of the trust for the taxable year which was to be accumulated and become a part of the corpus of the trust and was never to be distributed to the grantor was not taxable to the grantor under section 167 of the Revenue Act of 1928. In stating our conclusions we said, among other things:

It is true that the caption of section 167 of the Revenue Act of 1928 reads "INCOME FOR BENEFIT OF GRANTOR." But the section provides that the only income taxable to the grantor of the trust under this section is income which "may * * * be distributed to the grantor or be held or accumulated for future distribution to him * * *." The explicit and definite wording of this provision affords no justification for extending its boundaries to include income which, under the terms of the trust instrument or as a result of the exercise of a reserved power, never can be "distributed" to the grantor. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85. The fact that he may receive income produced from the investment of the accumulations does not make such accumulations *distributable* to him. * * *

Following *Fanny M. Dravo et al., Executors, supra,* we hold that the income of the trust in each of the taxable years which was accumulated and added to the corpus of the trust is not taxable to petitioner.

The Commissioner, in support of his position, relies principally upon *Commissioner* v. *Morton*, 108 Fed. (2d) 1005, and *Margaret R. Phipps*, 42 B. T. A. 329.

We think these cases are distinguishable on their facts. For example, in the *Morton* case, in the first trust therein involved, the grantor was originally and continued to remain beneficiary of all eight life insurance policies, which were retained by grantor and were never assigned to the trustee. Also grantor was originally and continued to remain the owner of the loan and cash surrender values and of the right to change the beneficiary. In the second trust involved in the *Morton* case, the grantor and/or her husband, the insured, owned the loan and cash surrender values and the right to assign the policy and to change the beneficiary. Also the trust could be terminated by grantor's husband, the insured, whereupon grantor's husband would receive accumulated income and the grantor, if living, would receive the remainder of the property. The aforementioned features which were present in the Morton trusts are not present in the instant case.

In the trust indenture involved in the *Phipps* case it was provided that the trustee should collect the insurance upon the death of the grantor's husband and should use the proceeds and any other trust property to pay inheritance and similar taxes which might be payable on grantor's share of the estate of her husband, the insured. Also it was provided that one year after the death of the grantor's husband, the insured, the trustee was bound to transfer to grantor, if living, the trust assets remaining after payment of taxes on grantor's share of her husband's estate. No such provisions are contained in the trust indenture involved in the instant case.

Because of the aforementioned differences and others which we might mention, we think the instant case is distinguishable from the *Morton* case and the *Phipps* case.

The case of *White* v. *Higgins*, 116 Fed. (2d) 312, was decided by the First Circuit subsequent to the filing of briefs in the instant case. Therefore, it was not cited by either party. We have not overlooked that case, however, in connection with the question we have here to decide and we find that the facts involved have a striking similarity to those present in the *Morton* case. The decision of the First Circuit in *White* v. *Higgins* was in favor of the Government, following the decision of the Supreme Court in *Helvering* v. *Clifford*, 309 U. S. 331. For the same reasons that we have distinguished the *Morton* case, we distinguish *White* v. *Higgins* and hold that it is not controlling on the question we have here to decide.

Is the income of the trust taxable to petitioner because of that provision which reads: "In case the said net income from such new Trust Fund shall in the judgment of the Trustee be insufficient to properly maintain and support the Settlor in the manner in which she is accustomed to live, then the Trustee is authorized to use such part of the principal of the Trust Estate as shall be necessary so to maintain and support the Settlor"? We think not.

There is a distinction between a trustee's absolute and unconditional power to surrender to the grantor a part of the trust corpus, on the one hand, and a fiduciary's duty to make a determination of conditions the existence of which would justify the trustee in surrendering to the grantor a part of the trust corpus, including accumulated income added thereto.

Because of the restrictions on the trustee's right to distribute trust corpus, including accumulated income, in the instant case the right to invade corpus under restricted conditions does not render the trust income taxable to the grantor. Cf. *Katharine Boyd Morehead*, 42 B. T. A. 851; *Lewis Hunt Mills, Administrator*, 39 B. T. A. 798.

Reviewed by the Board.

*Decision will be entered for petitioner.*

Disney concurs only in the result.

---

Opper, dissenting: Instead of justifying the limited scope accorded it here, I should have thought that *Douglas* v. *Willcuts*, 296 U. S. 1, was merely the occasion for applying to a comparatively narrow category of circumstances a doctrine which is infinitely more fundamental. It and its companion cases [1] deal with situations where the pecuniary benefit of a trust is obtained through the discharge of the beneficiary's legal obligation. It is not difficult to postulate more primary instances of the creation of benefits no less direct. To mention only one, a trust created for the purpose of buying food or clothes

[1] But cf. *Helvering* v. *Coxey*, 297 U. S. 694, reversing (C. C. A., 3d Cir.) 79 Fed. (2d) 661.

for the beneficiary might fall outside the particular facts of the *Douglas* case, but only by ignoring the reasoning there employed could it be placed beyond the underlying concept, of which there are not lacking both prior and subsequent authoritative recognitions. Thus, in *Corliss* v. *Bowers*, 281 U. S. 376, which of course considered specifically the forerunner of section 167, it was assumed that "If a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid." And cf. *Helvering* v. *Horst*, 311 U. S. 112.

It may be that the unwillingness to consider these accumulations as part of the grantor's income is attributable primarily to the assumption that the various judicial and legislative landmarks in this area are separate structures instead of parts of a single unit. This attitude, I recognize, is unfortunately encouraged by a limited view of the purely procedural results reached in such cases as *Helvering* v. *Wood*, 309 U. S. 344, and *Hormel* v. *Helvering*, 312 U. S. 552.[2] But the problem is a single problem and I can not believe that either Congress or the courts intended to have us treat sections 166 and 167, *Douglas* v. *Willcuts*, *supra*, and *Helvering* v. *Clifford*, 309 U. S. 331, as isolated towers between which the beckoning fields of tax avoidance can readily be discerned. Cf. Paul, Studies in Federal Taxation, 3d Series, 211.

I can not, therefore, bring myself to believe that it may be possible, without undergoing the logical tax consequence, for a grantor, as in this case, to secure the pecuniary benefits of trust accumulations not by any such indirect device as provisions limited to the payment to a stranger of the grantor's obligation to him, but by the simple process of securing to the grantor himself the economic benefit which accrues from the investment of the fund in income-producing property—a benefit which he can use for his unrestricted purposes. It is difficult to suppose that a principle which carries so far as to include the secondary consequences of *Douglas* v. *Willcuts* is impotent where the rewards to the grantor are as clear as in the present case. It should not be necessary to hesitate over nomenclature. The conclusion would be right, and it would be the same, whether we attributed it to the *Douglas* case alone, to section 167, to section 22 (a), or to any combination of them, if, as I think, one is merely intended to fill a gap which might otherwise be left by another; and it seems to me it would be amply supported by authority.

Thus it is now settled that "even though a literal interpretation of section 167 might tend to establish the immunity of the grantor

---

[2] Cf. Surrey, The Supreme Court and The Federal Income Tax, 35 Ill. Law Rev. 779, 799.

from the tax, no such literal interpretation is to be accorded the section." *Commissioner* v. *Morton* (C. C. A., 7th Cir.), 108 Fed. (2d) 1005, 1007. The actual physical distribution into the hands of the grantor is no longer considered to be a necessary condition for the application of the section, if it ever was. *Commissioner* v. *Morton*, *supra*; *Altmaier* v. *Commissioner* (C. C. A., 6th Cir.), 116 Fed. (2d) 162; *Kaplan* v. *Commissioner* (C. C. A., 1st Cir.), 66 Fed. (2d) 401; *William Lea Taylor*, 37 B. T. A. 875; *Margaret R. Phipps*, 42 B. T. A. 329.[3] A similar result has been reached in construing the cognate provisions of section 302 (c) with respect to estate tax.[4]

Literal compliance with the physical aspect of distribution being thus an unessential refinement, what can more nearly furnish that benefit which is its practical counterpart than an estate in the accumulations which the courts will treat as equitable title?[5] To borrow language used in an entirely different connection:

\* \* \* "Distribution to the taxpayer" is not necessarily restricted to situations where property is delivered to the taxpayer. It also aptly describes the case where property is delivered \* \* \* to trustees in trust for the taxpayer.

[*Maguire* v. *Commissioner*, 313 U. S. 1.]

It will be recalled that this trust indenture requires that:

\* \* \* upon the death of \* \* \* the husband of the settlor, the trustee shall collect the proceeds of any and all Insurance Policies \* \* \* and shall hold the same \* \* \* as a new Trust Fund \* \* \*

A. The net income from said new Trust Fund \* \* \* shall be paid to the settlor \* \* \* during the balance of her life.

---

[3] Where the Board said:

"\* \* \* On the death of petitioner's husband, the trust assets were to be used to pay the inheritance and estate taxes on petitioner's share of her husband's estate. If petitioner was required by law to pay any of the inheritance or estate taxes on her share of her husband's estate, sufficient cash funds to pay the taxes were to be distributed directly to petitioner. In any event, it is reasonable to infer that the use of the trust assets to pay the taxes would result in an economic benefit to petitioner, which would be, in substance, the equivalent of a distribution directly to her." [At this point there is a footnote reading as follows:

"The Report of the Ways and Means Committee on the Revenue Bill of 1924, 68th Cong., 1st sess., H. Rept. 179, p. 21, with respect to section 219 (h) (substantially the same for present purposes as section 167 of the Revenue Acts of 1932 and 1934) states in part as follows: 'Trusts have been used to evade taxes by means of provisions allowing the distribution of the income to the grantor *or its use for his benefit*. The purpose of this subdivision of the bill is to stop this evasion.' [Italics supplied]."

[4] "\* \* \* The trust income is treated of as an entity distinct from the corpus and the liability to estate tax is made to depend on whether the decedent had retained or surrendered his right to it. The right referred to is a substantial right in respect to the income generally, not necessarily every incident of right originally vested in the decedent. It would strain the meaning to construe the section as though it read that the estate tax would only be applicable to property transferred by trust in the cases where the decedent had retained an absolute right to have paid to himself each and every dollar of the income from the property. \* \* \*" *Helvering* v. *Mercantile-Commerce Bank & Trust Co.* (C. C. A., 8th Cir.), 111 Fed. (2d) 224; certiorari denied, 310 U. S. 654.

[5] In *Blair* v. *Commissioner*, 300 U. S. 5: "\* \* \* the right to income from the trust property was thought to be so identified with the equitable ownership of the property from which alone the beneficiary derived his right to receive the income and his power to command disposition of it that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it." *Helvering* v. *Horst*, *supra*; cf. *Harrison* v. *Schaffner*, 312 U. S. 579.

How can we say that the present grantor has not retained a beneficial interest sufficient to demonstrate that the accumulations are being held for her?[6]

We should be closing our eyes to the motives for accumulating income if we did not recognize that no single purpose is more universal or more powerful than the desire to acquire a competence, the income from which may be used to sustain the owner.[7] In this case that is the means which the grantor has selected for "the maintenance of effective benefit through the interposition of a subservient agency."[8]

In *Commissioner* v. *Morton*, *supra*, the court thought:

* * * it could hardly be argued, in view of the teaching of the *Willcuts* case, that if the taxpayer created a trust for the purpose of paying installments provided for by contract on the purchase of a house or any other property, title to which was taken in the name of or for the benefit of the grantor, the income would not be taxable to the grantor. We see no difference in principle between the property rights involved in the house and in the insurance policies.

If we make the further assumption that the house, the title to which has been taken "for the benefit of the grantor", remains an asset of the trust, but with all rights of use and occupancy reserved to the grantor, I think the case would be squarely parallel to the one being considered.

It is true, of course, that by force of the petitioner's directions she was not to have the trust benefits until her husband's death. But such postponement is no bar to the application of section 167. *William Lea Taylor*, *supra;* *Margaret R. Phipps*, *supra;* see *Everett D. Graff*, *supra*.

*Lucy A. Blumenthal*, 30 B. T. A. 591, and *Gail H. Baldwin*, 36 B.

---

[6] In *Everett D. Graff*, 40 B. T. A. 920, 923; affd. (C. C. A., 7th Cir.), 117 Fed. (2d) 247, the Board said:

"Section 167, unlike 166, deals with the interest of a grantor in trust income. Since, by definition, the act of creating the trust constitutes a severance from the grantor's property of whatever is assigned to the trustees, the subject matter of 167 may otherwise be described as the taxation of certain retained interests of the grantor in the income of the trust. Prior to the transfer the grantor's legal and beneficial right to receive income from the property was absolute. By the trust he parted with that interest to some extent. Whether section 167 comes into operation thus depends on whether the beneficial interest with which he parted was, as a matter of law, great enough so that it can be said that the accumulations of income did not continue to be held for his benefit."

[7] Cf. *Huber* v. *Helvering* (App. D. C.), 117 Fed. (2d) 782:

"Moreover, what happened to the monies assigned? They increased the corpus, and the corpus earns for the petitioner. He can now look forward to more income each year. * * *

"Then after the petitioner has enjoyed for life the income producing capacity of the money assigned that money will earn for his wife and will benefit his children both by the income it produces and later by the division of the principal itself. He has made use of his power of disposition to procure a satisfaction 'which he would otherwise procure only by the use of the money when received'."

[8] "We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid.' *Corliss* v. *Bowers*, 281 U. S. 376, 378. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. * * *" *Griffiths* v. *Commissioner*, 308 U. S. 355.

T. A. 364, have been deprived of all authority by *Commissioner* v. *Morton*, *supra*, reversing 38 B. T. A. 419, see particularly 424; and *Fanny M. Dravo*, 34 B. T. A. 190, is a lone and outworn precedent which was never subjected to the scrutiny of review by an appellate court and which in any event was decided prior to the change in the Commissioner's regulations [9] which were in effect when the section we are now considering became law. Cf. *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110; *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90. The *Dravo* case applied the literal interpretation which the *Morton* case, specifically, and the *Graff*, *Altmaier*, *Mercantile-Commerce Bank & Trust Co.*, and *Griffiths* cases, inferentially, have since rejected.

On the third point I see nothing to distinguish this case from *Lewis Hunt Mills, Administrator*, 39 B. T. A. 798, where the Board held the grantor taxable. No facts are shown here, as none were there, "to contradict the occurrence of the contingency upon which the exercise of the power" to pay accumulations to the grantor depends.

As the present result seems to me a retreat to the repudiated doctrines of legal formalism and economic unreality sometimes thought to have been inherent in the strict construction of tax statutes, I respectfully dissent.

[9] "* * * the inclusion of any trust within the scope of section 167 is based on the fact that the grantor has retained an interest in the income therefrom by which he is, or may be enabled at some time, to receive its benefits. If the grantor strips himself permanently and definitively of every such interest retained by him the income of the trust realized after such divesting takes effect is not taxable to the grantor * * *." Regulations 86, art. 167– (*b*).